OPINION
Defendant-Appellant, Robert P. Wayne, appeals from a judgment issued by the Paulding County Common Pleas Court finding him to be a sexual predator. Wayne asserts that the trial court erred in refusing his request for the appointment of a psychiatric/psychological expert to evaluate him and assist in his defense. Because sufficient independent information evidencing other indicia of recidivism was available to the court to afford appropriate consideration to the criteria set forth in R.C.2950.09(B)(2), the appointment of an expert to determine the likelihood of recidivism was not necessary and the court did not err in this respect. Wayne also argues that the adjudication is not supported by sufficient evidence and is against the manifest weight of the evidence. Reviewing the evidence in its entirety, we find these contentions to be meritless and, therefore, affirm the trial court's determination.
Facts relevant to the issues raised on appeal are as follows. On March 15, 1996, a Paulding County Grand Jury returned a seven count indictment against Wayne, including five counts of rape, aggravated felonies of the first degree in violation of R.C. 2907.02, and two counts of felonious sexual penetration, in violation of R.C. 2907.12(A)(1)(b), also aggravated felonies of the first degree.
On April 26, 1996, Wayne was found to be indigent and was appointed legal counsel. After entering an initial plea of not guilty to all counts of the indictment, Wayne subsequently entered a plea of guilty to three counts of rape and one count of felonious sexual penetration. The court accepted the plea and proceeded to sentence Wayne to an indefinite period of incarceration of ten to twenty-five years on each of the four counts, ordering that two rape counts be served concurrently. The court further ordered that the remaining rape and felonious assault counts run concurrently with each other, but consecutive to the other rape counts.
Pursuant to the provisions set forth in R.C. Chapter 2950, the trial court initiated sexual predator classification proceedings. A hearing on the matter took place on July 10, 2001. At his sexual offender classification hearing, Appellant made an oral motion for appointment of a psychiatric/psychological expert witness to assist in his defense. The trial court denied the request, finding that there was sufficient information available to the court to make its determination without securing an additional evaluation.
For its determination, the court examined the pre-sentence investigation report, the institutional summary report, the discovery in the case file, the sexual offender assessment, and the factors enumerated in R.C. 9250.09(B)(2). The trial court found that Wayne was approximately twenty-eight-years-old at the time of the offenses whereas the victim was five-years-old, that the victim was Wayne's niece, that there were other reported incidents involving other young children, that Wayne had a prior petty theft conviction, that, as evidenced by his confession and other witness statements, Wayne exhibited a demonstrated pattern of abuse, and that an institutional sex offender assessment classified Wayne as a "molester of the fixated type" with a very high risk of re-offending. Based upon the foregoing, the trial court found, by clear and convincing evidence, that Wayne was likely to engage in the future in one or more sexually oriented offenses and ordered that he be classified a sexual predator. This appeal followed.
Wayne presents two assignments of error for our consideration.
 Assignment of Error Number One The trial court erred to the prejudice of the Defendant in overruling the Defendant's motion for the appointment of an independent psychiatrist.
For his first assignment of error, Wayne cites to the Ohio Supreme Court's pronouncement in State v. Eppinger,[1] maintaining that theEppinger decision mandated the appointment of a psychiatric/psychological expert to aid in his defense at the sexual offender classification hearing and that the trial court erred when it denied his request.
The procedural requirements for sexual offender classification hearings set forth in R.C. 2950.09(B)(1), provide, in pertinent part:
 At the hearing, the offender and prosecutor shall have the opportunity to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witnesses and expert witnesses regarding the determination as to whether the offender is a sexual predator.
In Eppinger, the Ohio Supreme Court set forth the standard for appointment of expert witnesses in R.C. 2950.09(B)(1) classification hearings, stating:
 An expert witness shall be provided to an indigent defendant at an R.C. 2950.09(B)(1) sexual offender classification hearing if the court determines, within its sound discretion, that such services are reasonably necessary to determine whether the offender is likely to engage in the future in one or more sexually oriented offenses within the meaning of R.C. 2950.01(E).[2]
Because the decision of whether or not to appoint an expert is within the trial court's discretion, we must determine whether the decision was unreasonable, arbitrary or unconscionable, and not merely an error of law or judgment.[3]
In Eppinger, the defendant was convicted of kidnapping, assault, and two counts of rape in connection with the sexual attack of a nineteen-year-old girl, but had no prior record of sexually oriented offense. Recognizing that "one sexually oriented conviction, without more, may not predict future behavior" and that "only an expert can [predict behavior] absent a history of similar offenses or other indicators[,]" the Ohio Supreme Court found that a psychiatric or psychological expert was reasonably necessary under the circumstances and that the trial court abused its discretion in denying the defendant's request.[4]
The Eppinger court did not, however, hold that appointment was required for all first time offenders, specifically indicating that they "disagree[d] with the court of appeals that such an appointment was mandatory."[5] The Court provided further clarification of the pronouncement, noting the exceptional situation presented by pedophiles:
 In some instances, offenders will have several sexually oriented convictions, or will clearly fit a variety of the factors listed in R.C. 2950.09(B)(2)(a) through (j). An offender who preys on children, for example, may fit the pedophile profile, a class of sex offenders known for their especially high rate of recidivism. There may be sufficient evidence in the transcripts, victim impact statements, presentence investigation reports, prior history of arrests and convictions, age, etc., presented at the sexual offender classification hearing with respect to the R.C. 2950.09(B)(2) factors as they relate to the likelihood of reoffending. In those situations, appointment of an expert for an indigent offender may be unwarranted. * * *[6]
Therefore, where sufficient independent information evidencing a history of similar offenses or other indicia of recidivism is available to the court to afford appropriate consideration to the criteria set forth in R.C. 2950.09(B)(2), the appointment of an expert to determine the likelihood of sexual reoffense is not necessary.[7]
We find this case to be factually distinguishable from Eppinger. This was not a single encounter with a nineteen-year-old stranger, but rather, several encounters occurring over roughly a one-year period with Wayne's five-year-old niece. While investigating this conduct, the authorities received at least three other reports from individuals who had witnessed Wayne engaging in sexual activity with young children. Furthermore, as discussed below, Wayne fits several other criteria that demonstrate indicia of recidivism. Accordingly, we find that the trial court had sufficient information, particularly considering the age of the victim, nature of sexual activity, and demonstrated pattern of abuse, to determine whether Wayne was likely to reoffend sexually and to find that it was not reasonably necessary to appoint an expert within the parameters of Eppinger.[8] Therefore, the trial court did not abuse its discretion when it denied Wayne's request for appointment of an expert witness.
Accordingly, Wayne's first assignment of error is overruled.
 Assignment of Error Number Two The trial court erred to the prejudice of the Defendant in finding the Defendant to be a sexual predator as defined in Ohio Revised Code Section 2950.09.
For his second assignment of error, Wayne argues that the judgment classifying him as a sexual predator is not supported by sufficient evidence, or, in the alternative, that the trial court's decision is against the manifest weight of the evidence.
We note as an initial matter that, although the question of whether to address these arguments under civil or criminal standards for sexual predator determinations has not been uniformly resolved among Ohio's appellate districts, even the more stringent criminal standard requires a finding that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the proceeding must be reversed to overturn an adjudication.[9]
In order for an offender to be designated a sexual predator, the state must prove by clear and convincing evidence that the offender "has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented crimes."[10] The crime of rape is included in the definition of "sexually oriented offense."[11]
In making a sexual predator determination, R.C. 2950.09(B)(2) states that the "trial court shall consider all relevant factors, including, but not limited to, all of the following:"
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
The statutory scheme of R.C. Chapter 2950 provides the trial court with significant discretion in evaluating factors that may be relevant to its recidivism determination. "Rigid rules generally have no place in this determination, as courts should apply the enumerated factors and consider the relevance, application, and persuasiveness of individual circumstances on a case-by-case basis."[12] Though the registration requirements associated with sex offender classification have profound consequences,[13] these determinations are to be afforded considerable deference.[14]
The standard of clear and convincing evidence is as follows:
 [T]hat measure or degree of proof which is more than a mere `preponderance of the evidence', but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.[15]
In reviewing trial court decisions founded upon this degree of proof, an appellate court must examine the record to determine whether the evidence satisfies the clear and convincing standard.[16]
As alluded to in Eppinger, the legislature and a number of courts have acknowledged the overwhelming statistical evidence supporting the high potential of recidivism among sex offenders whose crimes involve the exploitation of young children.[17] In State v. Collins,[18] we found that:
 The age of the victim is probative because it serves as a telling indicator of the depths of offender's inability to refrain from such illegal conduct. The sexual molestation of young children, aside from its categorization as criminal conduct in every civilized society with a cognizable criminal code, is widely viewed as one of the most, if not the most, reprehensible crimes in our society. Any offender disregarding this universal legal and moral reprobation demonstrates such a lack of restraint that the risk of recidivism must be viewed as considerable.
The details of the underlying facts of Wayne's crimes are particularly illustrative of his pedophilic predilection and propensity to reoffend sexually against children. At roughly twenty-eight-years of age, Wayne subjected his five-year old niece to a variety of sexual activity over a period of approximately one year. Wayne reportedly kissed the young girl, fondled her chest, inserted his fingers and a toothbrush into her vagina, and engaged in sexual intercourse with her. The victim also indicated that that he masturbated while fondling her genitals, and Wayne's brother-in-law reported witnessing him performing oral sex on the victim on multiple occasions.
Wayne's mother indicated that he had acted out sexually from a very young age, attempting to fondle his sister when he was nine or ten-years-old and being caught in another fondling incident in the back of a bus when he was thirteen-years-old. As mentioned above, authorities also received at least three other reports from individuals who had witnessed Wayne engaging in sexual activity with young children. Defense counsel made no objection to the admission of this evidence and, even without consideration of these allegations, the record before this Court convinces us that there was sufficient other evidence presented to establish that defendant was likely to engage in other sexually oriented offenses by clear and convincing evidence.[19]
A sex offender assessment performed at the Madison Correctional Institution by David E. Ellis, M.A., and Carolyn D'Orta, Ph.D., opines that:
 Although he attained a [moderate level] risk score of only seventeen, it is felt that the risk assessment was not sensitive to many aspects of this individual's case. It is believed that the inmate's risk score is high for engaging in additional molestations with children. The data regarding this case strongly suggests that the inmate is classified as a molester of the fixated type. His primary sexual orientation appears to be towards children and these pedophilic interests appear to have begun during his adolescence. His offenses are likely to be compulsive and persistent. His offenses with his niece appear to be pre-meditated and his history reveals that he is likely to offend against either sex.
The assessment ultimately concludes that "the inmate is best classified as a molester of the fixated type, and that his risk of re-offending is very high." Moreover, Wayne has admitted that he has a sex offender problem, but has refused to discuss it, has blamed the situation on others, and, though having been incarcerated for roughly five years, is not currently enrolled in or on the waiting list for sex offender treatment counseling.
Our review of the record persuades us that there was sufficient evidence upon which the court could have found that Wayne was likely to commit another sexually oriented offense in the future by clear and convincing evidence. Weighing this evidence, the credibility of witnesses, and all reasonable inferences, we cannot say that the trier of fact clearly lost its way or created such a manifest miscarriage of justice that the proceeding must be reversed. Accordingly, Wayne's second assignment of error is not well taken and is therefore overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
BRYANT and HADLEY, JJ., concur.
[1] State v. Eppinger (2001), 91 Ohio St.3d 158.
[2] Id., at syllabus (emphasis added).
[3] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[4] Eppinger, 91 Ohio St.3d at 162-163.
[5] Id. at 162.
[6] Id.
[7] Id., State v. Estep (March 5, 2002), Paulding App. No. 11-01-07, unreported; State v. Williams (Nov. 14, 2001), Defiance App. No. 4-01-19, unreported.
[8] Estep, supra; Williams, supra; State v. Covill (Oct. 22, 2001), Stark App. No. 2001CA0074, unreported.
[9] State v. Robertson (Feb. 7, 2002), Hancock App. No. 5-01-31, unreported, citing C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279; State v. Thompkins (1997), 78 Ohio St.3d 380,387.
[10] R.C. 2950.01(E).
[11] R.C. 2950.01(D)(1).
[12] Robertson, supra.
[13] Eppinger, 91 Ohio St.3d at 162.
[14] Robertson, supra, citing State v. Cook (1998), 83 Ohio St.3d 404,426.
[15] State v. Schiebel (1990), 55 Ohio St.3d 71, 74, citing Cross v.Ledford (1954), 161 Ohio St. 469.
[16] Id.
[17] State v. Collins (June 29, 1999), Union App. NO. 14-99-05, unreported, citing R.C. 2950.09(B)(2)(c); Kansas v. Hendricks (1997),521 U.S. 346, 117 S.Ct. 2072.
[18] Collins, supra.
[19] See State v. Smith (Dec. 29, 2000), Crawford App. No. 3-2000-20, unreported, dismissed, appeal not allowed by 91 Ohio St.3d 1510 .